2014 JAN 27 AM 10: 33

COURT OF APPEALS DIV I
STATE OF WASHINGTON

FILED

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE-ANH NGUYEN, | ) | NO. 69263-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE, | ) | PUBLISHED OPINION |
| a governmental entity, | ) | |
| | ) | FILED: January 27, 2014 |
| Respondent. | ) | |
| | ) | |

LAU, J. — The-Anh Nguyen sued the City of Seattle for personal injuries and damages he sustained when the rented U-Haul truck he was driving struck a portion of a tree in a planting strip adjacent to Olson Place Southwest in Seattle. Nguyen appeals the trial court's decision after a bench trial finding the City breached no duty to maintain the roadway in reasonably safe condition and no act or omission by the City proximately caused the accident. Because substantial evidence supports the court's findings of fact and the findings support its conclusions of law, we affirm the judgment in the City's favor.

FACTS

<u>The Accident</u>[1]

On August 25, 2008,[2] The-Anh Nguyen was driving a rented U-Haul truck on Olson Place Southwest in Seattle, traveling 25 to 30 miles per hour. The truck was a 1997 Ford with a box-like cargo compartment extending over the passenger cab. It measures 11 feet tall, 8 feet wide, 22 ½ feet long, and 161 inch wheel base.[3] Two of Nguyen's friends rode with him in the cab. The weather was clear and the roadway dry and unobstructed.

Olson Place Southwest is an arterial street with two northbound lanes, two southbound lanes, and a center turn lane. Nguyen was driving northbound downhill in the curbside lane. Around 2:25 PM, "the top right front corner of the truck's cargo box struck an overhanging tree branch . . . where the large branch of the tree connects to the trunk." The tree was planted in the planting strip running along Olson Place Southwest. The force of the impact damaged the cargo box's upper corner and

---

[1] Nguyen raises 12 assignments of error, 5 of which relate to specific findings of fact. <u>See</u> Appellant's Br. at i-ii, 4-5. The findings of fact cited in this section were neither assigned as error nor argued in the briefing.

[2] Nguyen points to findings of fact 2, 6, and 10 and conclusion of law 2, each of which contain a minor clerical error regarding the date the accident occurred. To the extent his challenges rest on the erroneous date, this error does not undermine the court's findings and conclusions and is harmless. <u>See</u> <u>Anfinson v. FedEx Ground Package Sys. Inc.</u>, 159 Wn. App. 35, 44, 244 P.3d 32 (2010) ("'A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case.'") (quoting <u>State v. Wanrow</u>, 88 Wn.2d 221, 237, 559 P.2d 548 (1977)).

[3] The truck's dimensions are undisputed.

uprooted the tree, cleaving it in such a way that the branch and part of the trunk fell onto the roadway behind the truck. The court found:

> Because of the impact, the truck drove up onto the curb, as Mr. Nguyen and the passenger next to him struggled with the steering wheel to control the truck. The truck travelled about 40 feet on the planting strip, its right rear bumper nicking another tree before returning to the roadway. The court did not fault Mr. Nguyen's driving; he did not leave the roadway before impact.

The same day, a Seattle Department of Transportation ("SDOT") crew cut up and removed the debris and damaged tree. The SDOT crew also put the uprooted root ball back into the ground to fill the open hole in the planting strip.

The tree was one of many planted along Olson Place Southwest by SDOT, which maintains all City-owned street trees. To report unsafe or defective trees, SDOT provides an e-mail address and telephone number on its website. Each year SDOT receives 3,500 to 5,000 complaints regarding its trees. The complaints come from citizens, public utilities, police, and street users, including King County Metro, whose buses occasionally strike tree branches overhanging streets on its transit routes. A photograph of the tree Nguyen struck, taken one year before the accident, "shows the tree trunk leaning toward the roadway, but neither low-hanging branches nor damage to the tree that might have been caused by passing vehicles. (Ex. 50)."

Photos showed Metro buses using routes on Olson Place Southwest at the location of the accident. Nguyen's expert agreed that buses are 11 feet or taller. King County Metro never complained to SDOT about the tree at issue impacting its buses, although it has complained about other trees in the area. SDOT received no complaints about this specific tree before the accident.

The Lawsuit

Nguyen filed a personal injury lawsuit against the City of Seattle in June 2012. He alleged the City was negligent because it failed to properly maintain the tree branch that struck the U-Haul. The City denied the allegations and asserted affirmative defenses, including contributory negligence and failure to mitigate damages.

After the court denied Nguyen's partial summary judgment motion as to the City's liability, the parties proceeded to a bench trial. In its trial brief, the City argued in part that Nguyen offered no evidence that the City had actual or constructive notice that the tree at issue posed a hazard to street users. In response, Nguyen moved in limine to preclude the City from arguing lack of notice. Nguyen claimed that lack of notice was an affirmative defense that the City waived by failing to plead it. The City responded that notice is not an affirmative defense but an element of the plaintiff's case in chief. The court denied this motion.

The relevant trial testimony established that the City planted the trees along Olson Place Southwest in 1976, including the tree Nguyen struck. That tree is a "[r]easonably fast growing" species. RP (July 5, 2012) at 476. The City had no formal inspection program for tree branch clearance over roadways. Instead, it relied on citizen complaints. The tree at issue here was larger and closer to the roadway than many of the other trees planted along Olson Place Southwest. Nguyen's exhibit 45 admitted at trial consists of service requests the City received regarding other trees along Olson Place Southwest from 1999 to 2008.

After a three-day bench trial, the court entered extensive findings of fact and conclusions of law. It also expressly incorporated its oral rulings made after trial and

during the hearing to present the findings and conclusions.[4] The trial court made the unchallenged findings summarized above regarding the accident's cause. The court also made the following challenged findings:

> 6. Prior to August 24, 2008, SDOT had received no complaints regarding the tree struck by Mr. Nguyen's rental truck.
>
> . . . .
>
> 8. There is no evidence on the condition of the tree in question that would have conferred constructive notice of a danger to vehicles using Olson Pl. SW.
>
> . . . .
>
> 10. However, no act or omission of the City of Seattle or its employees or agents was a cause in fact of the accident of August 24, 2008.
> 11. The manner in which SDOT maintains Seattle's street trees does not represent a failure of ordinary care.

The court concluded that the City breached no duty to maintain Olson Place Southwest in reasonably safe condition and that no act or omission by the City proximately caused Nguyen's accident. It entered judgment in the City's favor. The court also concluded that the City lacked notice of any alleged danger posed by the tree. See RP (July 9, 2012) at 647 ("That the City is not liable, that they did not have notice either constructive, certainly not actual, of the problem with this tree.").

The court denied Nguyen's motion for reconsideration, in which he raised a res ipsa loquitur argument for the first time. Nguyen appeals.

---

[4] The court's written findings of fact and conclusions of law expressly incorporated "its oral rulings at the end of trial and at presentation in this set of findings and conclusions." Nguyen assigned no error to any of these oral findings and conclusions.

-5-

ANALYSIS

The question here is whether the City breached its duty to maintain Olson Place Southwest in reasonably safe condition. That question turns on whether the City had actual or constructive notice of the tree's alleged dangerous condition.[5]

Standard of Review

We review the trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003); Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). The label applied to a finding or conclusion is not determinative; we "will treat it for what it really is." Para-Medical Leasing, Inc. v. Hangen, 48 Wn. App. 389, 397, 739 P.2d 717 (1987). Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). In determining the sufficiency of evidence, we need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wn.2d 150, 155, 385 P.2d 727 (1963). We presume the trial court's findings are correct, and the party claiming error has the

---

[5] We note that Nguyen's trial theory about the nature of the dangerous condition is unclear. As noted above, Nguyen testified the dangerous condition was the low hanging branch. His accident reconstruction expert's June 8, 2012 declaration, exhibit 54, describes "the truck cab was struck by an overhanging tree . . . . A large limb that extended out and over the traffic. The tree impacted below the top of the . . . truck, which was at 11 feet above ground." Ex. 54 at 2. But at trial, the expert testified the point of impact was where the branch and tree intersected, the same finding made by the trial court. According to the expert at trial, the dangerous condition was the tree trunk leaning into the roadway. See Stockinger testimony on direct examination, RP (July 5, 2012) at 376 l. 1-4, 381 l. 11-13, 384.

burden of showing that a finding of fact is not supported by substantial evidence. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990). We defer to the trial court's assessment of witness credibility and evidence weight. In re Welfare of Sego, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973). We will not substitute our judgment for that of the trial court, even if we might have resolved the factual dispute differently. Dickie, 149 Wn.2d at 879-80. Unchallenged findings of fact are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); RAP 10.3(g).

An unchallenged conclusion of law becomes the law of the case. King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716, 846 P.2d 550 (1993). We review conclusions of law de novo. Dickie, 149 Wn.2d at 879-80. But when an appellant challenges conclusions of law not based on the law itself, but rather claiming that the findings do not support the court's conclusions, appellate review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether those findings support the conclusions of law. Am. Nursery Prods, Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 222, 797 P.2d 477 (1990); Willener v. Sweeting, 107 Wn.2d 388, 393, 730 P.2d 45 (1986).

Negligence

Negligence requires proof of four elements: (1) the existence of a duty to the person alleging negligence, (2) breach of that duty, (3) resulting injury, and (4) proximate cause between the breach and the injury. Am. Commerce Ins. Co. v. Ensley, 153 Wn. App. 31, 42, 220 P.3d 215 (2009).

Government entities are held to the same negligence standards as private individuals. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d

1220 (2005). The rule is well settled. A government entity has a duty to maintain its roads so that they are reasonably safe for ordinary travel. Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002); 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01 (3d ed. Supp.1994) (WPI).[6] "'That duty is conditional, however, for it arises only when the State has notice of, and time to correct, the hazard in question.'" Laguna v. Wash. State Dep't of Transp., 146 Wn. App. 260, 263, 192 P.3d 374 (2008) (quoting Leroy v. State, 124 Wn. App. 65, 68-69, 98 P.3d 819 (2004)). Accordingly, the City "'must have (a) notice of a dangerous condition which it did not create, and (b) a reasonable opportunity to correct it before liability arises for negligence from neglect of duty to keep the streets safe.'" Laguna, 146 Wn. App. at 263 (quoting Nibarger v. City of Seattle, 53 Wn.2d 228, 229, 332 P.2d 463 (1958)); see also WPIC 140.02.[7] Notice may be actual or constructive. Iwai v. State, 129 Wn.2d 84, 96,

---

[6] WPI 140.01 states: "SIDEWALKS, STREETS, AND ROADS—DUTY OF GOVERNMENTAL ENTITY

"The [county] [city] [town] [state] has a duty to exercise ordinary care in the [design] [construction] [maintenance] [repair] of its public [roads] [streets] [sidewalks] to keep them in a reasonably safe condition for ordinary travel." (Alterations in original.) (Boldface omitted.)

[7] WPI 140.02 states: "SIDEWALKS, STREETS, AND ROADS—NOTICE OF UNSAFE CONDITION

"In order to find a [town] [city] [county] [state] liable for an unsafe condition of a [sidewalk] [street] [road] that was not created by its employees, [and that was not caused by negligence on its part,] [and that was not a condition which its employees or agents should have reasonably anticipated would develop,] you must find that the [town] [city] [county] [state] had notice of the condition and that it had a reasonable opportunity to correct the condition [or give proper warning of the condition's existence].

"A [town] [city] [county] [state] is deemed to have notice of an unsafe condition if the condition has come to the actual attention of its employees or agents, or the condition existed for a sufficient length of time and under such circumstances that its employees or agents should have discovered the condition in the exercise of ordinary care." (Alterations in original.) (Boldface omitted.)

915 P.2d 1089 (1996). Constructive notice may be inferred from the elapse of time a dangerous condition is permitted to continue. Ingersoll v. DeBartolo, Inc., 123 Wn.2d 649, 652, 869 P.2d 1014 (1994).

Actual or constructive notice of a dangerous condition is an essential element of the duty of reasonable care.[8] Lewis v. Krussel, 101 Wn. App. 178, 186, 2 P.3d 486 (2000). But the notice requirement does not apply to dangerous conditions created by the governmental entity or its employees or to conditions that result from their conduct. Batten v. S. Seattle Water Co., 65 Wn.2d 547, 550-51, 398 P.2d 719 (1965). Nor is notice required where the City should have reasonably anticipated the condition would develop. WPI 140.02 and its comments; Argus v. Peter Kiewit Sons' Co., 49 Wn.2d 853, 860-61, 307 P.2d 261 (1957). In sum, if the government entity created the unsafe condition either directly through its negligence or if it was a condition that the governmental entity should have anticipated, the plaintiff need not prove notice. See WPI 140.02 and its comments; Albin v. Nat'l Bank of Commerce of Seattle, 60 Wn.2d 745, 748, 375 P.2d 487 (1962) ("A county's liability to the users of its roads is predicated upon its having notice, either actual or constructive, of the dangerous condition which caused injury, unless the danger was one it should have foreseen and guarded against.") (Emphasis added.) The question of foreseeability goes to the question of whether the defendant owed a duty of care to the plaintiff. Rikstad v. Holmberg, 76 Wn.2d 265, 268, 456 P.2d 355 (1969).

---

[8] Constructive notice is at issue in this appeal. Nguyen mistakenly contends, without citing to any controlling authority, that the City must show lack of notice since it is an affirmative defense.

Statutory Duty

The parties agree that two municipal ordinances define the scope of the City's

duty in this case. Former SMC 15.42.010, entitled "General provisions—trees," states

in part:

> No one shall allow to remain in any public place any tree trunk, limb, branch, fruit or foliage which is in such condition as to be hazardous to the public, and any such trees now existing in any such planting (parking) strip or abutting street area may be removed in the manner provided in this subtitle for the revocation of permits and removal of obstructions.

Former SMC 15.42.020, titled "Overhanging trees and shrubs," states:

> No flowers, shrubs or trees shall be allowed to overhang or prevent the free use of the sidewalk or roadway, or street maintenance activity, except that trees may extend over the sidewalk when kept trimmed to a height of eight feet (8') above the [sidewalk], and fourteen feet (14') above a roadway.

(Emphasis added.) Nguyen contends the City breached these statutory duties by failing

to maintain Olson Place Southwest in a reasonably safe condition for ordinary travel.

The City contends that Nguyen presented no evidence showing the tree branch was

less than 14 feet above the ground or posed a hazard to the public.[9]

The record indicates no evidence presented at trial on the height of the tree's

overhanging branch. Nguyen and his two passengers offered no testimony about the

relative height of the overhanging branch. Exhibit 50, a photograph of the tree taken by

SDOT the year before the accident, shows a branch over the roadway. But City arborist

Nolan Rundquist and Nguyen's accident reconstruction expert, Steven Stockinger,

_____

[9] In his opening statements and trial testimony, Nguyen maintained that the truck struck "a low-swinging branch" overhanging the roadway. RP (July 9, 2012) at 527. Seattle Police Officer Adonis Topacio testified that Nguyen told him "the branches of the tree were hanging too low and he couldn't avoid hitting it as he was driving." RP (July 3, 2012) at 285.

agreed that exhibit 50 provides no evidence of the clearance height of the large branch that visibly overhangs the street. No evidence shows the tree branch over the roadway was lower than 14 feet.

Nguyen assumes the tree was "dangerously overhanging the roadway" and claims that because the undisputed facts establish that the corner of his 11-foot-high truck hit a portion of the tree at issue while he was driving nonnegligently in the roadway, the only reasonable conclusion is that the City negligently failed to keep the tree trimmed to a height of 14 feet above the roadway. This conclusion, however, does not follow from the evidence. The trial court rejected this claim based on the testimony and exhibits presented. The trial court's unchallenged finding 3 indicates the top right front corner of his truck hit the tree "where the large branch of the tree connects to the trunk." Exhibit 50[10] shows that portion of the tree does not extend over the roadway. In unchallenged finding 6, the court found no physical evidence to indicate damage to the tree caused by vehicles driving on the roadway. The court found that exhibit 50 "shows the tree trunk leaning toward the roadway, but neither low-hanging branches nor damage to the tree that might have been caused by passing vehicles." The court's oral ruling indicates that "in Exhibit 50 there's nothing that looks like the branch . . . is too low. Where the truck intersects as far as I can tell with the tree is right where the branch meets the tree. It doesn't . . . intersect with a low hanging part of a branch." RP (July 9, 2012) at 645. Trial testimony supports these findings. Rundquist testified that

---

[10] Other trial photographs of the tree and branch taken by Nguyen soon after the accident show the impact caused the large branch to break off along with a significant portion of the tree trunk. Photographs also show the branch and part of the trunk coming to rest across two lanes of traffic.

while Exhibit 50 shows the tree trunk leaning toward the curb, "there's no way to really determine whether . . . it's actually protruding out over the surface of the street." RP (July 5, 2012) at 486. He stated that trees that protruded into the roadway would show signs of contact with vehicles in the form of scuff marks and missing bark, but no such signs are visible on the tree in exhibit 50. Rundquist also testified that he checked the City's database for any reports of complaints about the tree's clearance problems and that search revealed none.[11]

Nguyen testified that he "felt like the tree trunk was a little bit too close to the curb for some reason." RP (July 3, 2012) at 256. Stockinger testified that the tree trunk extended into the roadway,[12] but explained that he considered the curb to be part of the roadway. Curbs are not part of the traveled road surface as a matter of law. RCW 35.69.010. In fact, curbs are part of the sidewalk.[13] See RCW 35.69.010 (defining sidewalk as "any and all pedestrian structures or forms of improvement for pedestrians included in the space between the street margin, as defined by a curb or the edge of the traveled road surface, and the line where the public right of way meets the abutting property."). Stockinger stated, "[W]e can't tell how far [the trunk] exceeds the curb edge or what . . . ." RP (July 5, 2012) at 381. Stockinger testified that he could

---

[11] Nguyen points to exhibit 17, which consists of a 1992 "City of Seattle Street Tree Inventory" noting a "[b]ranch defect." This is an inspection report, not a "complaint" regarding the tree.

[12] The record shows that this opinion was based on no measurements. It was based entirely on exhibit 50, the photograph of the tree taken about one year before the accident.

[13] As noted above, Former SMC 15.42.020 provides that trees may overhang a sidewalk when trimmed to a height of eight feet over the sidewalk.

not determine whether the trunk encroached through the vertical plane of the street pavement and stated "nobody else can either." RP (July 5, 2012) at 395-96. Stockinger also testified about the impact point: "the impact somewhere up in that area by where the trunk bifurcates, somewhere, the limb, the trunk, that's where the impact occurred." RP (July 5, 2012) at 391. He stated, "Well, I think it was somewhere in the area of - - looking at the top photograph on Exhibit 50 - - right where the tree branch - - up there where it bifurcates and it goes up. And somewhere in that area would be my estimate. . . . So tree branch, tree trunk." RP (July 5, 2012) at 389. This is the same conclusion the trial court reached as to the impact point.

Stockinger also testified about the significance of a leaning tree and a driver like Nguyen who lacked the experience and familiarity to drive a large U-Haul truck:

> That [the leaning tree] would impair and it would cause a hazard to larger traffic that's heading down the roadway, especially traffic that is not over and hugging the lane line or over the lane line, or traffic that - - or persons that are driving vehicles that they're not used to the size of the vehicle, such as a rental moving truck, as opposed to somebody that's always driving a large vehicle, such as a commercial truck driver or a bus driver or something of that nature.

RP (July 5, 2012) at 384.

In its oral ruling, which it incorporated into its written findings, the court explained the probable cause of the accident in terms of Nguyen's inexperience and unfamiliarity in driving such a large truck:

> [T]he [cargo] box is actually wider than the truck is wide. It is certainly likely - - this is not a criticism of Mr. Nguyen - - that one would not necessarily realize how tall or how wide the vehicle is, as he doesn't drive it very often. It is a relatively tall vehicle, 11 foot, certainly bigger than . . . just a regular kind of pickup truck would be, and it is wider because a box has been set up on this Ford bed . . . .
> . . . .
> [Nguyen] is driving a vehicle with which he is unfamiliar, both horizontally [width] and vertically [height].

-13-

RP (July 9, 2012) at 640, 646. The trial court continued,

> [W]e see in the photos - - substantial damage - - I would describe it as a can opener to that corner of the [box of the truck] . . . the right passenger front part of the box that sits very close to the overhead of Mr. Liem[14] where he is sitting. Considerable force. And we know it's enough to cleave the tree.
> Looking at the tree and everything we know about the tree did not show it to be a damaged - - or there's no photo that shows some mark in the middle to show that it was just waiting to fall down or that something light would have caused the tree to fall down.

RP (July 9, 2012) at 642.

The trial court then rejected Nguyen's claim and Stockinger's opinion that the tree was leaning into the roadway:

> Mr. Stockinger during his testimony indicated that he thought [the tree] might be leaning into the roadway. I am not sure that that's likely . . . it's certainly possible that Mr. Nguyen is all the way over in the corner - - I mean, at the edge right next to the curb, that wouldn't be a very safe way to drive. . . .
> So we don't know exactly where [Mr. Nguyen] is in the roadway . . . .

RP (July 9, 2012) at 642-43.

As discussed above, we conclude substantial evidence supports the trial court's findings of fact and these findings support its conclusions of law that the City breached no duty to maintain the roadway and no act or omission by the City proximately caused the accident.[15]

---

[14] Passenger Liem sat in the seat closest to the right passenger front door.

[15] In addition, because Nguyen fails to prove that (1) any exception to the notice requirement applied or (2) even assuming a dangerous condition existed, the City had actual or constructive notice of such condition, he fails to establish each element of his negligence claim by a preponderance of the evidence.

Duty to Inspect

Nguyen argues that the City had a duty to inspect the trees along Olson Place Southwest, citing Former SMC 15.42.010 and .020 quoted above. These ordinances impose no such duty. He also argues premises liability, alleging the City had an "implied common law duty to inspect its trees" as a "possessor of land adjacent to a public roadway." Appellant's Br. at 22 (boldface omitted). But Nguyen cites no common law, statutory, or regulatory authority requiring a municipality to inspect its street infrastructure as a component of its duty to provide streets that are reasonably safe for ordinary travel. He also cites no authority supporting his assertion that "[f]or the limited purpose of the trees the City has planted, [it] assume[s] the role of possessor of land adjacent to a public roadway." Appellant's Br. at 22. See State v. Logan, 102 Wn. App. 907, 911, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Nguyen cites Curtis v. Lein, 169 Wn.2d 884, 239 P.3d 1078 (2010) for his premises liability theory. Curtis involved a private landowner's duty of care to a tenant (invitee) on the land. Curtis, 169 Wn.2d at 890. In contrast, it is undisputed that the City does not own the land at issue here. Premises liability has been applied to municipalities, but those cases almost invariably involved public land other than streets and sidewalks. See, e.g., Ochampaugh v. City of Seattle, 91 Wn.2d 514-15, 518, 588 P.2d 1351 (1979) (applying attractive nuisance rule of premises liability to drowning on public land); Cultee v. City of Tacoma, 95 Wn. App. 505, 524, 977 P.2d 15 (applying

premises liability rules as alternative to recreational use statute in drowning case on public land). The City's duty to persons using public roads derives from its status as a municipality, not as a landowner.

Res Ipsa Loquitur

Nguyen asserts a presumption of negligence under the res ipsa loquitur doctrine. Whether the doctrine applies in a given context is a question of law reviewed de novo. Curtis, 169 Wn.2d at 889. A plaintiff may rely on res ipsa loquitur's permissive inference of negligence if: (1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the agency or instrumentality that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence. Curtis, 169 Wn.2d at 891. The first element is satisfied if one of three conditions is present:

> "(1) When the act causing the injury is so palpably negligent that is may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries."

Curtis, 169 Wn.2d at 891 (some internal quotation marks omitted) (quoting Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003)). If any of the three elements of res ipsa loquitur is missing, a presumption of negligence is unwarranted. Res ipsa loquitur is "'ordinarily sparingly applied, in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential.'" Curtis, 169 Wn.2d at 889 (some internal quotation marks omitted) (quoting Tinder v. Nordstrom, Inc., 84 Wn. App. 787, 792, 929 P.2d 1209 (1997)).

Nguyen claims res ipsa loquitur applies because the tree was destroyed shortly after the accident and he had no opportunity to inspect it for discoverable defects.[16] But as discussed above, the court found that the truck's cargo box overhung the planting strip and hit the tree trunk without negligence by either party. This is not the kind of "'peculiar and exceptional case[ ] . . . where the facts and the demands of justice make [res ipsa loquitur's] application essential.'" Curtis, 169 Wn.2d at 889 (quoting Tinder., 84 Wn. App. at 792). The trial court did not abuse its discretion in denying Nguyen's motion for reconsideration based on res ipsa loquitur.[17]

## CONCLUSION

Because substantial evidence supports the court's findings and its findings support its conclusion that the City breached no duty and acted nonnegligently in maintaining Olson Place Southwest, we affirm the judgment in the City's favor.

WE CONCUR:

---

[16] This claim is questionable because, as the record shows, Nguyen took numerous photographs of the tree soon after the accident.

[17] We note that Nguyen inadequately argued this doctrine in his motion to reconsider and on appeal. His argument consists of conclusory statements that essentially reiterate the elements of res ipsa loquitur without elaboration. See Clerk's Papers at 467-68 (motion for reconsideration); Appellant's Br. at 23-25.

No. 69263-1-I, Nguyen v. City of Seattle

GROSSE, J. (concurring) — I concur in the result and agree that the evidence here is insufficient to establish the City of Seattle's negligence. But I disagree with the majority's analytical approach, which incorrectly imposes a notice requirement to establish a negligence claim against a government entity. As the Supreme Court has recently reiterated, "governmental entities are liable for their 'tortious conduct' to the 'same extent' as a private person or corporation."[1] "Consequently, a plaintiff claiming that a municipality has acted negligently may recover after proving 'the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury.'"[2] Notice is not an element of such a claim.

While foreseeability is a component of the duty analysis,[3] "'the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated.'"[4] Simply put, the focus remains on establishing the government's duty and a breach thereof, not on whether the governmental entity had notice of the danger. And it may well be

[1] Washburn v. City of Federal Way, 178 Wn.2d 732, 753, 310 P.3d 1275, 1287 (2013) (quoting RCW 4.92.090(2); RCW 4.96.010).
[2] Washburn, 178 Wn.2d at 753 (quoting Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 605, 257 P.3d 532 (2011)).
[3] "[T]he existence of a duty turns on the foreseeability of the risk created. . . . If a risk is foreseeable, an individual generally has a duty to exercise reasonable care to prevent it. . . . If a risk is not foreseeable, an actor generally has no duty to prevent it." Parrilla v. King Cnty., 138 Wn. App. 427, 436, 157 P.3d 879 (2007) (citations omitted).
[4] Rikstad v. Holmberg, 76 Wn.2d 265, 456 P.2d 355 (1969) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wn.2d 316, 321, 255 P.2d 360 (1953)).

that with modern advances and technology, municipalities may more easily

anticipate such a general field of danger.