# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SHANNON OGIER,

        Appellant,

        v.

THE CITY OF BELLEVUE, a municipal corporation,

        Respondent.

No. 79132-0-I

DIVISION ONE

PUBLISHED OPINION

FILED: March 2, 2020

MANN, A.C.J. — Shannon Ogier appeals the trial court's order on summary judgment dismissing her personal injury case against the City of Bellevue (City) arising from injuries suffered after Ogier ran over an uncovered manhole while driving in Bellevue. The City alleged that because it had no notice of the defect, it did not owe a duty to Ogier. The trial court agreed. We reverse.

I.

Ogier was driving west on NE 24th Street in Bellevue on a dark evening in October 2014, when she drove over an uncovered manhole in the middle of the traffic lanes. Ogier called 911 to report a "dangerous" situation. The street was partially lit and the storm drain was not visible without direct light from the responding police

officer's headlight. The manhole cover was off to the right side of the lane on the sidewalk.

Ogier's car bumper was knocked off. Ogier submitted a claim for property damages for the reimbursement of her deductible and to her insurer, State Farm. The City approved the claim and paid the property damage to State Farm and Ogier.

Ogier developed a sharp pain in her shoulder two days after the accident, and sought physical therapy for the treatment. Ogier submitted a follow-up claim to the City. The underlying lawsuit ensued.

The City moved for summary judgment dismissal of Ogier's action. Ogier responded to the City's motion and relied on deposition testimony from the following City employees.

Bellevue Utilities Operations Manager Don McQuilliams was the superintendent of the storm and surface water department at the time of the incident. He said that the City has approximately 5,000 to 6,000 covered storm manholes and each cover weighs approximately 75 to 100 pounds. A common Allen wrench can be used to remove the bolts that hold the covers down.

During the time of the accident, it was the City's practice to inspect the storm drain systems, including the storm manholes once every five years. When the City inspected the storm drain manholes most recently prior to the accident, no problems were detected. Outside of the inspections, the City repairs manholes upon receipt of a specific complaint. Missing manhole covers are reported to the City through a 24-hour emergency maintenance response number, and a response crew is dispatched immediately. McQuilliams recalled that the City was notified about the missing cover

when Ogier reported the incident. He found no other reports of missing or loose covers in the area.

McQuilliams explained that although persons or entities performing work on the manholes should obtain a permit ahead of time, "nothing actually prevents someone from simply opening up a storm manhole to look inside." Private contractors, private consultants, private locate services, and other utilities such as Puget Sound Energy, may access the manholes to inspect storm drain pipes. He explained further that "nobody asks for permission" to remove the covers. McQuilliams said that the City does not have a system to determine who had accessed the manhole recently, and that consultants often will not obtain permits. No right of way permits had been issued to work on the manholes near the accident. McQuilliams did not find any work orders to indicate that the City had worked on the manholes on NE 24th Street. McQuilliams stated that he responds to dislodged manhole covers a few times a year. Occasionally manhole covers will vanish, which McQuilliams attributes to vandalism.

Anthony Badia is a construction lead for the City, working in the storm and surface water department. He inspected the manhole covers along NE 24th street after the incident, noticing that they were not bolted down. He said if the manholes are within the travel lane, like the one Ogier ran over, they should be bolted down. Badia explained that the purpose of the bolts is to keep the manhole covers "locked down and prevent them from coming up if a vehicle drives over them, to prevent damage to personal property or city property, and to prevent any incidents with any pedestrians on a sidewalk nearby if one does come off." Badia dispatched a crew to lock down all of

3

the covers with bolts on NE 24th street. He said it is not uncommon for the manhole covers to become loose or go missing.

Jerry Campbell, who works for the storm department, physically inspected the manholes after the incident. Campbell recalled two instances of manhole covers popping up. He said that it was unlikely that a vehicle could have knocked the cover off, and that the cover was likely removed by someone.

The City's motion for summary judgment contended that because the City had no notice of the defect, the City did not owe a duty to Ogier. The trial court granted summary judgment and dismissed Ogier's action. Ogier appeals.

II.

Ogier argues that the court erred in concluding that the City had no duty to ensure that city streets and storm drains were safe for the public. We agree.

We review summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281. The moving party has the initial burden of proving the absence of an issue of material fact. Young v. Key Pharm. Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). When the moving party is a defendant who meets this initial showing, then the inquiry shifts to the plaintiff to make "a showing sufficient to establish the existence of an element essential to that party's case." Young, 112 Wn.2d at 225.

To recover on a claim of negligence, the plaintiff must show: (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach

4

as the proximate cause of the injury. Wuthrich v. King County, 185 Wn.2d 19, 25, 366 P.3d 926 (2016). The question before us is whether the City had a duty.

A municipality has the duty "to maintain its roadways in a condition safe for ordinary travel." Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 786-87, 108 P.3d 1220 (2005). Actual or constructive notice is necessary to prove breach of the duty of care. Nguyen v. City of Seattle, 179 Wn. App. 155, 165, 317 P.3d 518, 523-24 (2014). "But the notice requirement does not apply to dangerous conditions created by the governmental entity or its employees or to conditions that result from their conduct." Nguyen, 179 Wn. App. at 165. The plaintiff is excused from proving notice when the City should have reasonably anticipated that the condition would develop. Nguyen, 179 Wn. App. at 165. Constructive notice arises if the condition existed for a period of time so that the municipality should have discovered its existence through the exercise of reasonable care. Niebarger v. City of Seattle, 53 Wn.2d 228, 230, 332 P.2d 463 (1958). "Whether one charged with negligence has exercised reasonable care is ordinarily a question of fact for the trier of fact." Bodin v. City of Stanwood, 130 Wn.2d 726, 735, 927 P.2d 240 (1996).

Although there is no evidence that the City had actual notice of the missing manhole cover, a jury could find that the City should have reasonably anticipated this hazard. The evidence offered by Ogier demonstrates that the City did not regularly check and monitor the manholes, despite being aware that third parties or vandals could remove the cover at any time. Further, evidence suggests that the manhole covers on NE 24th street were not bolted down at the time of the accident, even though it was the City's practice to bolt down the covers in the roadway. The evidence also demonstrates

5

that while the City has a permit process, the City knows that no one actually applies for permits before working on the manholes. The City further admits that it has no control to require third parties to use this process. Finally, the City employees knew of past instances of missing manhole covers. McQuilliams testified that he knew that manhole covers sometimes went missing as a result of vandalism. Badia testified that manhole covers in the road should be bolted down, but it was not uncommon for the manhole covers to become loose or go missing. And Campbell testified that he knew of instances of manhole covers popping up or going missing.

The evidence supports that even if the City did not have actual notice, there is a dispute of material fact whether the City should have reasonably anticipated the hazard of an uncovered manhole would develop. Nguyen, 179 Wn. App. at 165. Because there are disputed issues of material fact whether the City breached its duty of care to Ogier, summary judgment was not appropriate.[1]

Reversed.

_Mann, ACJ_

WE CONCUR:

_Chun, J._          _Smith, J._

---

[1] Ogier also argues that the City is equitably estopped from arguing that it is not liable because the City accepted Ogier's property damage claim. The City argues that this issue is not properly before this court. Because we find that the court erred in granting summary judgment, we will not address this argument. Additionally, the City correctly states that the language and intent of ER 408 is clear. Therefore, this argument is without merit.