# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BETHANY CARLSON,<br><br>                    Appellant,<br><br>           v.<br><br>MICHAEL CARLSON,<br><br>                  Respondent. | No. 81616-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Bethany Carlson appeals the trial court's denial of her petition for a domestic violence protection order against her then husband Michael Carlson. She argues the trial court abused its discretion in denying the petition. We affirm.

## FACTS

Bethany and Michael Carlson were married on September 30, 2000. They have three children together. Bethany[1] also has a child from a previous relationship, now aged 29, whom Michael helped raise since the child was five.

On November 18, 2019, Bethany told Michael that she wanted a divorce. Bethany asked him to move out of the family home two days later. Michael complied.

Bethany then left with the children for Disneyland. The parties planned to have the children stay with Michael for the weekend after they returned. The

---

[1] We use the parties' first names for clarity. No disrespect is intended.

parties also agreed that Michael could go to the family home and pick up some items while the rest of the family was in Disneyland.

Michael's attorney advised him to collect various documents and financial information in preparation for the divorce action. While the rest of the family was in Disneyland, Michael returned to the house to gather the documents and information.

Bethany was generally responsible for managing the family's finances and paying household bills. While gathering the information his attorney requested, Michael discovered several joint credit card accounts of which he was previously unaware. He closed these accounts.[2] The same day, he put $6,920.00 in the family bank account for Bethany's use. Bethany, still in Disneyland with the children, attempted to use the credit cards, which were declined. She initiated the following text message conversation with Michael,

> [Bethany]: Any idea on why our credit cards aren't working? Two of them so far.
>
> [Bethany]: Answer please.
>
> [Bethany]: ??
>
> [Michael]: My attorney advised me to cancel all the credit cards I put money in the joint account for you to use. The money I put in there was $6900 on top of what was already in there that money is to be used for bills on the housebills [sic] and for you and the kids to get home from Disneyland. I am paying the mortgages
>
> [Bethany]: You're amazing in the middle of my trip. Total [M]ike Carlson move. Since you're always only looking out for yourself … I can assure you I will be doing the same

---

[2] One of Bethany's personal credit card accounts was also closed, though Michael denies having done so.

[Bethany]: Was gonna play nice guy but I'm done

[Bethany]: All bets are off

[Bethany]: And by law… divorce papers have to be filed and delivered before you do that … I know that for a fact from my attorney … so joe [sic] any proceeds from the auction will go into a lock fund

[Bethany]: until we have a [custody] agreement in order [sic] from here on out you cannot see the kids since you abandoned them

. . . .

[Michael]: I'm begging you please do not drag the kids into this mess this is between me and you, try to make it go smoothly

[Bethany]: YOU brought the kids into this. YOU ATTACKED THEIR MOTHER… I don't think you realize the gravity of your decisions.. we have no more agreements between us - ever. You locked that line off when you went into attack mode on me and started cutting off every means I have for actual survival now .. even my OWN credit lines which is now fraud. You have a history of verbal violence with [the children] and myself. You have a history of violence against me… and the children. I will be keeping them safe and with me until you are evaluated for mental stability by a court of law.

Michael's brother served Bethany with a petition for dissolution in the SeaTac airport when she returned from Disneyland on November 29, 2019. On December 4, 2019, Bethany filed for a domestic violence protection order (DVPO) on behalf of herself and the parties' three minor children. She obtained a temporary protection order based on the petition that same day. Family Court Services conducted an investigation and recommended that the protection order be granted.

In the petition, she alleged that Michael threatened to make her "disappear." She also alleged that Michael was stalking her, including through the use of

3

spyware and cameras in her home. She alleged that Michael had repeatedly sexually assaulted her during their marriage. And, she alleged that Michael had threatened to kidnap their daughter. She further accused Michael of abusing her oldest son and the couples' son in the past.

Michael requested an evidentiary hearing, which the trial court held on June 1-2, 2020. Both parties testified. Two of Bethany's longtime friends testified on her behalf.

Bethany's friends indicated that they were afraid that Michael might harm Bethany. They also indicated that Michael had made "little comments" about how Bethany could disappear during their marriage. They both said that Bethany had told them that Michael sexually assaulted her during the marriage. And, they relayed that when she went out with friends, Michael called her on FaceTime[3] "obsessively."

Both of Bethany's witnesses admitted that they had never witnessed any domestic violence between the parties, and were testifying based solely on what Bethany told them. In its findings, the trial court noted that it had to admonish Bethany for giving answers to one of the witnesses during their testimony.

After Bethany presented her evidence, Michael moved for a directed verdict. He argued that Bethany had failed to show that domestic violence had occurred. The trial court reserved judgment, holding that Bethany had made a case that was sufficient to prevent dismissal. The trial court indicated it wanted to hear additional evidence from Michael before making a decision.

---

[3] "FaceTime" is the video communication software from Apple Inc.

Michael testified last. He denied physically or sexually assaulting Bethany. He denied stalking Bethany but admitted to calling her via FaceTime while she was out with her girlfriends. He denied installing spyware in the home. He denied saying she would "disappear." He attributed the comment to a mutual friend making a joke about how Michael could "bury" Bethany if she left him because he had excavation equipment for his business. Michael also denied abusing the children. But, he admitted to slapping his stepson once when he was sixteen after finding him smoking marijuana at the family's cabin.

Michael also introduced text message conversations between himself and Bethany, himself and the children, and group texts with the family. Michael claimed that the text conversation between him and Bethany was a complete record of their text message conversations from the year prior to the DVPO petition. None of those text messages makes any mention of abuse of any kind until around the time the DVPO petition was filed. Bethany claims Michael removed incriminating text messages from the chain.

The trial court denied the DVPO. It found that Bethany had not established that domestic violence had occurred. In its ruling, it noted that Michael denied sexually assaulting Bethany. It noted that none of Bethany's witnesses had direct knowledge of any assault, and that all of their knowledge came from what Bethany had told them. It also noted that it had to admonish Bethany for giving answers to a witness during the hearing. And, it found that Bethany had introduced no supporting evidence for her claims that Michael had installed spyware in her house or was otherwise stalking her or her friends. The trial court also noted that Bethany

had not provided any evidence supporting her claim that Michael had removed text messages from the conversations between the two.

Bethany appeals.

DISCUSSION

Bethany appeals the trial court's denial of the DVPO. She assigns numerous errors to the trial court's factual findings. Among other things, she argues that the trial court erred in finding that she had not established that she experienced domestic violence. Bethany also requests attorney fees for this appeal.

We review the trial court's decision to grant or deny a DVPO for abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). A trial court abuses its discretion where its decision is manifestly unreasonable, or its discretion is exercised on untenable grounds or for untenable reasons. Id. Where, as here, the trial court has weighed the evidence, our role is simply to determine whether substantial evidence supports the trial court's findings of fact, and whether those factual findings support the conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair-minded person that the premise is true. Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014). We defer to the trial court's assessment of witness credibility and weight of evidence. Id. We will not substitute our judgment for the trial court's even if we might have resolved a factual dispute

6

differently. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003).

Here, the trial court made a finding that Bethany had not established that domestic violence had occurred. If supported by substantial evidence, that finding would support the legal conclusion that the DVPO petition should be dismissed. See RCW 26.50.030 (DVPO exists for protection in cases of domestic violence). "Domestic violence" in this context means, "Physical harm, bodily injury, assault, or the infliction or fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110."[4] RCW 26.50.010(3). RCW 9A.46.110(1) defines "stalking" as "intentionally and repeatedly harass[ing] or repeatedly follow[ing] another person [where t]he person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person."

Bethany alleged that Michael sexually assaulted her throughout their marriage. She also alleged that Michael stalked her and her friends. And, she alleged that Michael had abused the children.

In support of her accusations of sexual assault, she introduced her own testimony and that of her two friends, who testified that Bethany had told them about the assaults as well. Both witnesses admitted that they did not have personal knowledge about the assaults. Bethany is correct that a trial court may consider hearsay evidence in DVPO proceedings. See Gourley v. Gourley, 158

---

[4] Bethany makes numerous allegations against Michael. We focus our attention in this opinion on those accusations which, if true, would fit the statutory definition of domestic violence.

7

Wn.2d 460, 467, 145 P.3d 1185 (2006) (hearsay rules do not apply to protection order proceedings).  But, it is for the trial court to determine how to weigh such evidence.  Nguyen, 179 Wn. App. at 163 (weight of evidence questions for the trial court).  Here, the trial court considered Bethany's witnesses' testimony alongside the fact that they had no firsthand knowledge of the alleged assaults.  The trial court also considered that Bethany had to be prevented from coaching one of the witnesses during the hearing.  The trial court weighed this testimony against the husband's denials, and a year's worth of text messages between the parties that make no mention of the assaults.[5]  Given the competing evidence, a fair minded person could conclude that no sexual assault had occurred.

Bethany's accusation of stalking includes Michael putting cameras in her home and calling her "obsessively" while she was out with friends.  The trial court found that Bethany had provided no evidence that Michael had installed cameras in her home.  Bethany does not challenge that finding.  Nor does she now point to any evidence in the record that supports such an allegation.

Regarding Bethany and her witnesses' allegation that Michael "obsessively" called her while she was out with friends during their marriage, this by itself does not support a finding of stalking.  "Stalking" in this context must be accompanied by a reasonable fear of physical harm to the victim, another person, or property.  RCW 9A.46.110(1).  Here, Bethany's witnesses described that if Bethany did not

---

[5] Bethany assigns error to the trial court's finding that the text messages do not show domestic violence.  But, her supporting argument is not that the text messages show abuse, but rather that the fact they do not show abuse does not mean that abuse did not happen.

answer or comply with Michael's demands for attention, "[h]e'd be mad at her. There would be extensive phone calls. You know, rudeness, name-calling." It is not an abuse of discretion to conclude on this evidence that Bethany was not placed in fear of injury and that no stalking occurred. Michael also denied calling Bethany to the extent Bethany and her friends alleged. Substantial evidence supports a finding that no stalking occurred.

Bethany also claims that Michael abused the children. But, aside from statements from her oldest son from another relationship, she provides no corroborating evidence to support that claim. The oldest son, now 29, is not included in the DVPO petition. And, aside from a single incident where Michael admits slapping him when he was 16, Michael denies abusing him or the other children. The trial court considered the allegation, but determined it was an exercise of corporal punishment, not abuse. Bethany sought the DVPO on behalf of herself and their three minor children. There was no evidence that Michael had harmed or put them in any danger. That finding is supported by substantial evidence.

The remainder of Bethany's accusations involve offhand comments about making her "disappear." She testified that based on those comments, she was afraid that Michael would harm her. Michael testified that he did not make those comments. If the statements were not made, they could not constitute abuse. It is not an abuse of discretion to believe the testimony of Michael over Bethany.

Bethany made numerous allegations against Michael about conduct in the past. No immediate act of abuse coincided with the filing. The text messages

9

between the parties for the preceding year did not corroborate the threatening relationship to which she testified. However, Michael had just cancelled credit card accounts that affected Bethany. In response, she sent text messages that indicated she would retaliate against him for his handling of the divorce proceedings.

Substantial evidence supports the trial court's finding that no domestic violence occurred. It was not an abuse of discretion to deny the DVPO.[6]

We affirm.

_Appelwick, J._

WE CONCUR:

---

[6] Bethany also requests attorney fees for this appeal pursuant to RAP 18.1. That rule allows us to award attorney fees to a party when authorized by statute. RAP 18.1. RCW 26.50.060(1)(g) allows a court to require the respondent in a DVPO action to pay the petitioner's legal fees. Because Bethany has not prevailed on appeal, we decline to award her fees.