**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| GIANG HUONG NGUYEN, | No. 84541-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| RACHIT THIRANI, | |
| Appellant. | |

FELDMAN, J. — Rachit Thirani appeals a five-year domestic violence protection order (DVPO) protecting Giang Huong Nguyen. Because the facts of this case are known to the parties, we do not repeat them here except as relevant to the arguments below. Thirani argues the evidence is insufficient to support the superior court's finding that he committed domestic violence. We affirm.

**A. Standard of Review**

We review a superior court's decision to grant a DVPO for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). Where, as here, the superior court has weighed the evidence, we defer to the superior court's determinations regarding the persuasiveness of the evidence, witness

credibility, and conflicting testimony. Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

We review the superior court's findings of fact for substantial evidence. In re Marriage of Fahey, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). Evidence is substantial if it is sufficient to persuade a rational and fair-minded person that a premise is true. Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014). "[S]ubstantial evidence review 'is deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed below.'" Garza v. Perry, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023) (quoting State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019)). Here, that party is Nguyen.

**B. Stalking**

Thirani first argues that the superior court abused its discretion in entering a DVPO because there was no substantial evidence of stalking. We disagree.

Chapter 7.105 RCW governs the issuance of civil protection orders, including DVPOs. Under RCW 7.105.010(9)(a), "domestic violence" includes "stalking" of "one intimate partner by another intimate partner." The statute broadly defines "stalking" as follows:

> "Stalking" means any of the following:
>
> > (a) Any act of stalking as defined under RCW 9A.46.110;
> >
> > (b) Any act of cyber harassment as defined under RCW 9A.90.120; or
> >
> > (c) Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, surveillance, keeping under observation, disrupting activities in a harassing manner, or following of another person that:

> (i) Would cause a reasonable person to feel intimidated, frightened, under duress, significantly disrupted, or threatened and that actually causes such a feeling;
>
> (ii) Serves no lawful purpose; and
>
> (iii) The respondent knows, or reasonably should know, threatens, frightens, or intimidates the person, even if the respondent did not intend to intimidate, frighten, or threaten the person.

RCW 7.105.010(34).

In addition to the detailed definition of "stalking" in RCW 7.105.010(34)(c), subsection (a) of the statute incorporates by reference the definition of "stalking" in RCW 9A.46.110. At the time Nguyen filed her petition, that statute provided as follows:

> A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
>
> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
>
> (b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
>
> (c) The stalker either:
>
> > (i) Intends to frighten, intimidate, or harass the person; or
> >
> > (ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

Former RCW 9A.46.110(1) (2021).

Here, substantial evidence demonstrates that Thirani engaged in domestic violence by stalking Nguyen. The trial court record includes numerous e-mails, text messages, and social media messages showing that Thirani repeatedly contacted or attempted to contact Nguyen even after she told him the contact was unwanted and

3

blocked him. By way of example, in a series of 11 e-mails – sent within a few hours – Thirani wrote "Now the trouble starts," "You made [th]is ugly," and "Since when have you been lying?" The record also shows that Thirani told Nguyen that if she did not want to "mend things up and be honest" he would "be forced to make things ugly." Lastly, there is also evidence that Thirani appeared at Nguyen's house uninvited during the day, drove by her house and her boyfriend's house at night, and repeatedly attempted to contact her friends on social media. There is sufficient evidence of stalking to warrant the issuance of the DVPO.

Relying primarily on the definition of "stalking" in former RCW 9A.46.110(1), Thirani argues that the superior court abused its discretion in entering the DVPO because Nguyen did not prove by a preponderance of the evidence that she reasonably feared injury. But the definition of "stalking" in effect at the time Nguyen filed her petition does not require such a finding. In addition to incorporating the definition of "stalking" in former RCW 9A.46.110(1), RCW 7.105.010(34)(c) also states that "stalking" includes "[a]ny course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, surveillance, keeping under observation, disrupting activities in a harassing manner, or following of another person . . . ."

Thirani next asserts that his communications were not threatening and, instead, he was merely attempting to expose Nguyen's own wrongdoing. Relatedly, Thirani emphasizes that Nguyen did not petition for a DVPO until after he filed a civil suit against her and that the superior court expressed concern as to Nguyen's "reliability and credibility . . . given the allegations that have been presented." But the superior court also explained, and we agree, that the decision to grant a DVPO "does not have any bearing

4

on the civil case between the parties." The superior court further explained, and again we agree, that "Thirani's own emails and words . . . are the basis for the order here today" and "if you have been wronged, this is not how you handle it." Even if Thirani did not intend to intimidate, frighten, or threaten Nguyen, he reasonably should have known that these repeated and continuing contacts would cause such feelings. The evidence was sufficient to warrant the issuance of the DVPO.

### C. Intimate Relationship

Thirani also argues that the superior court abused its discretion by entering a DVPO because Nguyen did not prove that the parties were in an intimate relationship. We disagree.

A DVPO petition "must allege the existence of domestic violence committed against the petitioner . . . by an intimate partner or a family or household member." RCW 7.105.100(1)(a). "Intimate partner" is defined in relevant part as "persons who have or have had a dating relationship where both persons are at least 13 years of age or older." RCW 7.105.010(20)(d). In this context, a "dating relationship" is "a social relationship of a romantic nature." RCW 7.105.010(8). In making this determination, courts may consider the length of time the relationship existed, the nature of the relationship, and the frequency of interaction between the parties. Id.

Substantial evidence supports the conclusion that Thirani and Nguyen had a "dating relationship" and thus were "intimate partners" as required to issue a DVPO. Nguyen told police that she met Thirani on a dating site and that they "soon began a brief dating relationship that ended abruptly five months ago." Thirani similarly told police that he "met [Nguyen] on a dating [a]pp . . . and that they have been dating ever since." In his

declaration, Thirani described his relationship with Nguyen as "romantic." He stated that he and Nguyen were physically intimate on multiple occasions and that Nguyen told him she loved him. And in text messages between the parties, Nguyen agreed that she "loved" Thirani and that she expected him to "spoil her" as "a [boyfriend is] suppose[d] to do."

In response to this evidence, Thirani emphasizes that Nguyen initially petitioned for an antiharassment protective order in which she described Thirani as an "acquaintance" and did not allege that she and Thirani were "intimate partners." No authority supports the proposition that a petitioner must specifically allege the existence of an intimate partnership in a petition for an antiharassment protective order where, as here, substantial evidence supports a determination that the parties' relationship met the required statutory standard to support issuance of a DVPO.

Affirmed.

 

Feldman, J.

WE CONCUR:

Chung, J.

Birk, J.