[No. 37297.   Department One.   January 28, 1965.]

DONALD L. BATTEN, *et al., Respondents,* v. SOUTH SEATTLE
WATER COMPANY, *Appellant.**

*Davies, Pearson, Anderson & Pearson,* for appellant.

*Roberts & Anderson* and *Robert L. Anderson,* for respondents.

SOULE, J.†—This is an action to recover damages for personal injuries suffered by respondent Phyllis Batten. The injuries were sustained when she stepped upon the insecurely positioned lid of a water meter box which gave way, causing her to fall.

Respondents' case is based upon the theory that this particular meter box was installed in such a way that it created a dangerous condition. It is conceded that the appellant

*Reported in 398 P. (2d) 719.

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

had no notice that the lid of the box was out of place or otherwise insecure.

The location of the installation is in suburban King County in a developing residential area. At the northwesterly corner of the intersection of South 166th Street and 48½ Avenue South, the water company installed two water meter boxes in the unimproved portion of the public right of way beyond the shoulder and drainage ditch, directly beside a street sign post, and about 18 inches from the property line along South 166th Street. This area has no sidewalks.

The evidence is in dispute as to whether, at the time of the installation in September of 1961, the appellant's employees knew or had reason to know that they were, in fact, putting the boxes in a pathway used by the public. However, the record reflects substantial evidence that, although the area had been recently graded in the course of building homes, the path was apparent.

The box into which Mrs. Batten fell was placed in this path, directly at the bottom of a sharp incline. The grade was such that it rose 2 feet in elevation in 4 feet of horizontal travel. Its surface was earth, containing gravel and sand. Quantities of spoil from this incline tended to fall onto and around the meter box.

The top of the box was a rim of concrete 21 by 16 inches, which contained a 5/16-inch recess. Into this recess was placed a flat steel lid 17½ by 12½ inches and 5/16 of an inch thick. The top of the lid was flush with the top of the concrete rim, which, in turn, was generally flush with the surrounding ground.

The lid weighed about 12 pounds and was enough smaller than the recess that it did not make a snug fit, thus permitting a small amount of lateral movement and creating a crack around the lid where small particles could lodge.

On January 28, 1962, about 4:30 p.m., when daylight was failing, Mrs. Batten had occasion to go to the home of her friend and neighbor, Mrs. Pell. She proceeded in an easterly direction, came down the incline and stepped on the meter

box lid. The lid tilted, permitting her leg to go into the box and causing her to fall.

Earlier in the day, between 10 and 11 a.m., Mrs. Pell had used the path. In her testimony, she stated that she noticed nothing unusual about the meter box lid and testified that the lid was then in place.

According to Mr. Batten, who examined the scene the day after the accident, the recess had dirt in it, which made the lid fit poorly.

There was no other direct evidence concerning the condition of the lid on the day in question. However, Mr. Linde and Mr. Sallee, employees of the appellant, testified that it was their practice, when reading meter boxes, to see that the lids were reseated and, if necessary, to clean the recesses of any accumulated dirt. Mr. Linde was not quite sure but was of the belief that he had checked this meter box 7 to 10 days before the accident, in connection with his duties of reading the meters. He conceded that this particular box had no meter in it, but stated that it was customary to check the empty boxes to be sure that no one had made a connection by mistake. These witnesses also testified that, on occasion, children dislodged meter box lids, but there was no evidence that, previously or on this particular occasion, children had dislodged this lid or had even been playing in the vicinity. Mrs. Pell testified that she had never seen children playing with these meter boxes.

Over objection, two civil engineers, experienced in water works design and installation, were each permitted to express the opinion that the installation was not safe.

The witness Mr. Hitchings explained:

"This particular box has a very slight recess that is, it has a steel cover and the recess is only the thickness of the steel so that if there is an accumulation of dirt or rust works under the recess—  .  .  .  Any accumulation of rust or sand in the recess would then make the cover— would then raise the cover to the point where it would not be recessed and when it is not recessed it will slide across the box."

The witness Mr. Batcheller expressed the opinion that this cover might be suitable for 99 per cent of the locations, but that it was not suitable for the location in a pathway where the site was covered with loose gravel. He, likewise, testified concerning the mechanical action whereby material working into the recess would gradually raise the box lid after a period of time, so that it would move when subjected to slight lateral force.

Each witness testified concerning the existence of boxes with more securely-fitting lids.

Appellant assigns error to the failure to grant motions to dismiss and for judgment notwithstanding the verdict. These motions were based upon the premise that, from the evidence given, the only permissible inference was that someone had tampered with the lid and that, since the appellant had no notice, it could not be held liable. See *Hunt v. Bellingham,* 171 Wash. 174, 17 P. (2d) 870.

We do not believe that the jury was so restricted. The evidence is to be viewed in the light most favorable to the prevailing party. There was no direct evidence that anyone had tampered with the box, or that children had even been seen playing in the area. The testimony of Mrs. Pell that the lid was in place earlier in the day could well have been taken by the jury to mean no more than that it appeared to be secure, because the accumulation process had not yet reached the critical point. Nor was the jury required to believe, in view of Mr. Linde's own uncertainty on the matter, that he and Mr. Sallee had, in fact, examined, cleaned and carefully reset the lid within 7 to 10 days before the accident. The jury was entitled to believe that the lid had reached a critical point due to the accumulation of debris in the recess and that Mrs. Batten was the first person to step upon it after it had reached that point.

Rather than being similar to *Hunt v. Bellingham, supra,* where the meter box was installed in a parking strip and had a lid which could not slide off, this case, because of the highly unusual circumstances of the installation, is controlled by the principle of *Russell v. Grandview,* 39 Wn. (2d) 551, 236 P. (2d) 1061, in which it was held that,

where a municipal corporation creates the dangerous condition, no notice is required.

The motions were properly denied.

Error is assigned to the ruling of the trial court in permitting the expert witnesses to express their opinions that the box was not safe for the location.

In *Gerberg v. Crosby,* 52 Wn. (2d) 792, 795, 329 P. (2d) 184, our court held that the admission of expert testimony is largely discretionary with the trial court. The court further said:

" '. . . There are many matters, however, about which the triers of fact may have a general knowledge, but the testimony of experts would still aid in their understanding of the issues. . . .'

"This court has long recognized that a *qualified expert* is competent to express an opinion on a *proper subject* even though he thereby expresses an opinion on the ultimate fact to be found by the trier of fact. . . ."

Therefore, in view of the somewhat obscure mechanical process by which the lid could gradually become unstable, there was no impropriety in permitting the witness, not only to describe this process, but to express their conclusions concerning the safety of the installation of a box under circumstances which would permit these forces to come into play.

Error is assigned to the giving of instructions No. 7 and No. 9, which make reference, among other things, to the duty of the appellant in maintaining the meter box. Likewise, exception is taken to instruction No. 9A, which refers to concurring negligence.

The exceptions to the instructions were all united in one statement which was plainly premised on appellant's theory that the instructions were improper because the evidence would permit only the conclusion that a third party had intervened, the same theory propounded in the motion to dismiss. Exceptions in this form were advisable to forestall an argument that, by failing to except to the instructions, appellant had waived its rights under the motion. However, the exception provides too narrow a base from

which to press the argument now advanced in which the appellant points out that the issue of negligent maintenance had been stricken from the case at the end of the respondents' evidence. The exception did not remind the trial court of this fact or of the substantial distinction between the concepts of concurring and intervening negligence.

While we tend to agree with the appellant that it was inappropriate to instruct upon concurring negligence, we note that the appellant's theory of intervening negligence was fully covered in instruction No. 9B, to which no exception was taken.

■ Since appropriate exceptions were not advanced in the trial court, we will not now consider arguments presented for the first time on appeal. *Owens v. Anderson,* 58 Wn. (2d) 448, 364 P. (2d) 14; *Barnes v. Labor Hall Ass'n, Inc.,* 51 Wn. (2d) 421, 319 P. (2d) 554.

Finding no merit in the assignments of error, the judgment is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.