
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CHEUK CHHANN and
THOAI-HUONG NGO, as Personal
Representatives of the ESTATE OF
TRUNG D. NGO, Deceased, and
CHEUK CHHANN, an individual,

     Appellant,

  v.

STATE OF WASHINGTON,
FRANK JAMES WILLING, JR., an
individual, and MINE HER, an
individual,

     Respondents.

No. 74999-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 5, 2017

SPEARMAN, J. — The State of Washington has a duty to build and maintain roads so that they are reasonably safe for ordinary travel. A party alleging that the State has breached this duty must produce evidence that a roadway was not reasonably safe. In this case, an apparent road rage incident caused a westbound car to lose control on a State highway. The westbound car crossed the center line and collided with an eastbound car driven by Trung Ngo. Ngo died as a result of the collision.

Ngo's estate and his widow (collectively Ngo) sued the State of Washington. Ngo asserted that the State negligently failed to install a median barrier when it made improvements to the highway in 1992. The State produced evidence that the road was reasonably safe at the time of the accident in 2011

and moved for summary judgment. Because Ngo did not meet his burden of producing specific facts to rebut the State's evidence, we affirm the trial court's dismissal of his claim.

## FACTS

State route (SR) 18 runs for approximately 28 miles in southwest King County. North of the Issaquah-Hobart Road, from about milepost (MP) 20.2 to MP 27.9, SR 18 is a rural highway that crosses mountainous terrain. The fatal collision occurred at MP 21.5. SR 18 does not have a median barrier between MP 20.95 on the west and 22.15 on the east.[1] For ease of reference, we refer to this section as between MP 21 and 22.

In April 2011, drivers Frank Willing and Mine Her recklessly passed one another in what appears to be an incident of road rage. Willing was driving west on SR 18. Her pulled out of a parking lot and entered the highway in front of Willing, forcing Willing to brake. According to Willing, Her drove below the speed limit and appeared distracted. Willing drove behind Her for a mile or two because the road had a median barrier and he could not pass. He admitted he may have been tailgating.

When he reached a section of SR 18 that was marked as a no-passing zone but did not have a median barrier, Willing crossed the center line to pass Her, causing oncoming cars to swerve. Willing reentered the lane of traffic close in front of Her and braked. Her swerved onto the right shoulder. Her then

---

[1] Ngo describes the eastern boundary of this section as MP 22.2, but he provides no support for this figure. His expert stated that the specific portion of SR 18 that does not have a median barrier is between MP 20.95 and 22.15.

accelerated while driving on the shoulder and passed Willing on the right. When Her attempted to reenter the lane of traffic in front of Willing, he lost control.

Meanwhile, Ngo was driving east on SR 18 with his wife, Cheuk Chhann. Her's out-of-control westbound car spun, crossed the center line, and struck Ngo's car, killing Ngo and injuring Chhann. Willing and Her pleaded guilty to reckless driving.

Ngo sued the State, alleging that when the Washington State Department of Transportation (WSDOT) made improvements to SR 18 in 1992, it negligently decided not to install a median barrier between MP 21 and 22.[2] Ngo's negligence claim was based on a design study conducted in 1992.

In 1992, WSDOT commissioned a private civil engineering firm to prepare a report identifying improvements to reduce the severity of accidents on SR 18 between MP 7.9 and 27.9. In recommending improvements, the consultant engineers were to consider environmental factors, physical factors, time constraints, and a budget of about $10 million.

The engineers analyzed the geography and condition of the highway, 1990 traffic volume, data on fatal accidents from 1980 to 1990, and data on all accidents on the highway from 1987 to 1990. The report concluded that accidents involving turning vehicles at existing intersections constituted the biggest single safety issue on SR 18. Center line crossing accidents were the

---

[2] In addition to her claims against the State, Ngo also sued Willing and Her. But after the trial court granted the State's motion for summary judgment, Ngo moved for an order certifying the case for immediate appeal. She pointed out that because Willing and Her had "paid or offered their insurance liability policy limits in settlement" and appeared to have no other assets, the sole remaining issue was the State's alleged liability. Clerk's Papers (CP) at 798. The court granted Ngo's motion.

3

second identified problem. These accidents often occurred during snowy or icy conditions and were most common above the 1,000-foot elevation on Tiger Mountain. The third identified problem was in the vicinity of bridges, where roadway shoulders narrowed.

As to the area north of the Issaquah-Hobart Road, the design report concluded that the highway had an accident rate that was slightly lower than the statewide average for all rural highways but a fatality rate that was well above the statewide average. The report concluded that center line crossing accidents were the primary cause of fatalities on that section of road and that drunk driving, ice, and snow were significant contributing factors in these accidents. The report stated that improper passing did not appear to be a significant contributor to the fatality problem, although it was a factor in less severe accidents.

The design report considered alternatives to address the identified problems. All of the alternatives included designated turn lanes at intersections and improvements to signage and illumination. Alternatives A1 and A2 were specific to the area south of the Issaquah-Hobart Road, where the terrain is level or rolling. Alternatives B1 and B2 addressed the area north of the Issaquah-Hobart Road. Alternative B1 included a median barrier between MP 20.4 and 26.3. Because this alternative would require widening the road in mountainous areas, the report estimated the cost of Alternative B1 at $18.5 million.

The report proposed adopting Alternative A2 and portions of Alternative B1. As to Alternative B1, the report recommended installing a median barrier only between approximately MP 22 and 25. According to the report, "[b]y reducing the

length of [the] barrier section, concerns with traffic operations, enforcement, and maintenance are minimized while providing separation for opposing traffic flows in the portion of the corridor with the highest incidence of crossover accidents which could be prevented with a median barrier." CP at 60. The report estimated the total cost for the recommended improvements at $10.2 million. It appears that WSDOT implemented the design report's proposals without change but the record contains little information about this process.

Relying on the design report, Ngo asserted that WSDOT was on notice in 1992 that SR 18 posed an inherent danger for crossover accidents. He contended that the State delegated the responsibility for making the roadway safe to the engineers who prepared the design report and these engineers erred in deciding not to install a median barrier on the entire northern section of SR 18. Because there was still no median barrier between MP 21 and 22 in 2011, Ngo asserted that WSDOT negligently failed to correct a known crossover danger.

Ngo relied on statements from his engineering expert, Michael Tuttman. Tuttman's analysis was limited to the 1992 design report and its underlying data. Based on this data, Tuttman stated that all of SR 18 north of the Issaquah-Hobart Road, including between MP 21 and 22, was unreasonably hazardous and required a median barrier. Tuttman stated that, in his opinion, the engineers reduced the length of the median barrier proposed in Alternative B1 based on financial considerations, not engineering judgment.

The State moved for summary judgment, contending that Ngo failed to establish that the State had breached its duty to ensure that SR 18 was

reasonably safe for ordinary travel. The State produced evidence that, in addition to the 1992 improvements, WSDOT implemented further improvements to SR 18 in 2007, including rumble strips between MP 21 and 22. A State expert declared that, from 2001 to 2011, the accident rate between MP 21 and 22 was below average and that accident rate decreased after the rumble strips were installed. The State also asserted discretionary immunity as a defense to Ngo's claim. Ngo moved for an order striking the State's discretionary immunity defense.

The trial court denied Ngo's motion to strike. The court granted the State's motion for summary judgment based on both Ngo's failure to establish the elements of negligence and discretionary immunity. Ngo appeals.

## DISCUSSION

Ngo challenges the dismissal of his claim on summary judgment. We review an order of summary judgment de novo, performing the same inquiry as the trial court. Howland v. Grout, 123 Wn. App. 6, 9, 94 P.3d 332 (2004). The party that moves for summary judgment has the initial burden of showing that there is no genuine issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the nonmoving party to rebut the moving party's contentions by producing specific facts demonstrating the existence of a genuine factual issue. Id. at 225-26. Summary judgment is appropriate if the nonmoving party fails to establish the existence of each element essential to that party's case. Id. at 225 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). We may affirm the

trial court on any basis supported by the record. Huff v. Wyman, 184 Wn.2d 643, 648, 361 P.3d 727 (2015).

A party claiming negligence must establish duty, breach, causation, and injury.[3] Keller v. City of Spokane, 146 Wn.2d 237, 242, 44 P.3d 845 (2002) (citing Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)). Ngo asserts that his claim satisfies each element. The State contends that Ngo failed to establish that the State breached a legal duty.

The State has a duty to exercise "ordinary care to build and maintain its roadways in a reasonably safe manner for the foreseeable acts of those using the roadways." Id. at 252 (citing Berglund v. Spokane County, 4 Wn.2d 309, 319-21, 103 P.2d 355 (1940)). To determine whether a roadway is reasonably safe, courts have looked to evidence of the road's visibility, traffic patterns, design standards, and accident history.

The Supreme Court considered an allegation that a railway crossing was inherently unsafe in Owen v. Burlington Northern and Santa Fe Railroad Co., 153 Wn.2d 780, 108 P.3d 1220 (2005). In that case, the plaintiff alleged negligent design because, when cars were stopped at a nearby traffic light, the queue of cars often extended over the railroad crossing. Owen, 153 Wn.2d at 785. The plaintiff produced evidence that an incline limited drivers' ability to see oncoming

---

[3] The State argues that we must affirm the trial court's grant of summary judgment based on negligence because Ngo failed to address negligence in his opening brief and thus waived any challenge. Ngo does not mention negligence in his assignments of error and the discussion of negligence in his opening brief is cursory at best. However, the State fully addresses negligence in its brief and makes no argument that it will be prejudiced if we review the issue. There are no compelling reasons not to address Ngo's negligence claim. We accordingly consider the merits of the issue despite Ngo's technical noncompliance with the rules. State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

trains. Id. at 789. She also produced evidence of the volume of vehicle and train traffic, train speeds, the frequency with which cars queued over the railroad crossing, and lack of signage. Id. The Owen court held that this evidence established the existence of a genuine question of fact as to whether the crossing was inherently unsafe. Id. at 790.

Similarly, in Keller, a plaintiff alleged that an intersection was inherently unsafe because it lacked a four-way stop. 146 Wn.2d at 240. In that case, the plaintiff produced evidence at trial that, despite good visibility, many accidents occurred at the intersection and citizens had petitioned for a four-way stop. Id. Keller also demonstrated that national guidelines, the city's internal standards, and city traffic engineers all indicated that the intersection was unsafe and required a four-way stop. Id. at 240-41.

In this case, Ngo argues that SR 18 between MP 21 and 22 is unsafe because the State failed to install a median barrier. His theory is that as a result of the 1992 report and underlying data, the State was aware of the danger of crossover accidents at the collision site and that a median barrier was necessary to ameliorate the danger. But, because WSDOT never installed a median barrier, the roadway remained dangerous when Ngo's accident occurred in 2011. The State contends that it produced evidence that the portion of road at issue was reasonably safe for ordinary travel in 2011, and Ngo failed to rebut that evidence.

We agree with the State. The State produced evidence that, in addition to the 1992 improvements to SR 18, it implemented further improvements in 2007 including rumble strips between MP 21 and 22. The State also produced

evidence that, according to accident data from 2001 to 2011, SR 18 between MP 21 and 22 had an accident rate lower than the average for rural highways and that the accident rate decreased after the rumble strips were installed. Further, Ngo does not appear to dispute that the section of road at issue conforms to applicable design standards, had good visibility, and was in good condition at the time of the accident.

To rebut the State's evidence that the road was reasonably safe, Ngo relies on the 1992 design report, its underlying data, and his expert's statements based on the 1992 report. Ngo's expert declared that accident data from 1980 to 1990 demonstrated that all of SR 18 north of the Issaquah-Hobart Road, including between MP 21 and 22, posed a high risk of crossover accidents and required a median barrier. But Ngo's evidence relates to the condition of the road in 1992 and fails to address improvements since that time or the road's condition when the accident occurred in 2011. He relies solely on accident data from 1980 to 1990, but fails to explain how 20-year old accident data rebuts recent accident data.

Because Ngo failed to rebut the State's evidence, he did not meet his burden of establishing the existence of a genuine question of fact on whether the State breached its duty. See Young, 112 Wn.2d at 225-26 (after the moving party meets its initial burden, the burden shifts to the nonmoving party to rebut that showing by producing specific facts).

But, Ngo contends that the 1992 design report put the State on notice that SR 18 north of the Issaquah-Hobart Road posed an extraordinary danger for

9

crossover accidents. He asserts that, by electing not to install a median barrier between MP 21 and 22, the State allowed a dangerous condition to remain in place and that condition eventually caused Ngo's death in 2011.

In his limited discussion of negligence, Ngo relies on cases analyzing the State's liability for a condition it did not create, such as ice on the road. See Wright v. City of Kennewick, 62 Wn.2d 163, 381 P.2d 620 (1963) (road allegedly unsafe due to ice); Niebarger v. City of Seattle, 53 Wn.2d 228, 332 P.2d 463 (1958) (sidewalk allegedly unsafe due to ice). Where the road is unsafe due to a condition the State did not create, the State must have notice and a reasonable opportunity to correct the dangerous condition "before liability arises for negligence from neglect of duty to keep the streets safe." Niebarger, 53 Wn.2d at 229. Ngo also relies on the pattern jury instruction related to these cases. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.02 (6th ed. 2012) (WPI).[4]

Ngo's reliance on these authorities is misplaced. The cited cases address whether the State had sufficient notice of dangerous conditions it did not create and thus a duty to correct them. Here, Ngo alleges that the State created the dangerous condition by designing and constructing improvements to SR 18 but failing to install a median barrier. Where the State creates the dangerous

---

[4] WPI 140.02 states, in relevant part:

In order to find a [town] [city] [county] [state] liable for an unsafe condition of a [sidewalk] [street] [road] that was not created by its employees, [and that was not caused by negligence on its part,] [and that was not a condition which its employees or agents should have reasonably anticipated would develop,] you must find that the [town] [city] [county] [state] had notice of the condition and that it had a reasonable opportunity to correct the condition [or give proper warning of the condition's existence].

condition, no notice is required. Batten v. S. Seattle Water Co., 65 Wn.2d 547, 550-51, 398 P.2d 719 (1965). Thus, the issue in this case is not whether the State had notice of a dangerous condition, but whether the State's failure to install a median barrier in 1992 rendered SR 18 unsafe for ordinary travel in 2011.

At the summary judgment hearing, the State presented ample evidence that at the time of the collision, SR 18 between MP 21 and 22 was reasonably safe. Ngo does not rebut this evidence. Instead, he relies on accident data from 1992 showing that the road was unsafe at that time. In light of the State's evidence, this is insufficient to create a disputed issue of material fact about the condition of the road in 2011. As such, the trial court did not err when it dismissed Ngo's claim on this ground.

We affirm the trial court's grant of summary judgment to the State. We do not reach the State's argument that Ngo failed to establish causation or the parties' arguments concerning discretionary immunity.[5]

Affirmed.

Spearman, J.

WE CONCUR:

Becker, J.

---

[5] At oral argument, the State asserted that its primary argument was that Ngo failed to establish his negligence claim. The State explained that it only raised discretionary immunity as a defense because Ngo framed his negligence claim as a challenge to WSDOT's 1992 decisions regarding improvements to SR 18. Because Ngo failed to establish a prima facie negligence claim, we do not reach the merits of the State's defense. We likewise need not address Ngo's request that we strike declarations from two State experts on this issue.