# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DOUG SLUYS,                                    )    No. 76131-5-I
                                               )
                    Appellant,                 )
                                               )    DIVISION ONE
          v.                                   )
                                               )
CITY OF SEATTLE, WAVEDIVISION                  )
HOLDINGS LLC, aka WAVE                         )
BROADBAND LLC, and                             )
BROADSTRIPE, LLC,                              )    UNPUBLISHED OPINION
                                               )
                    Respondents.               )    FILED: April 9, 2018
                                               )

MANN, J. — A city has a duty to exercise ordinary care in the maintenance and repair of public sidewalks to keep them in a reasonably safe condition for ordinary travel. Doug Sluys sued the City of Seattle (City) and Broadstripe, LLC (Broadstripe) for personal injuries and damages he sustained after he slipped and fell on a metal utility vault cover owned by Broadstripe while walking on a City sidewalk in downtown Seattle. Sluys appeals the trial court's dismissal of his claims both against the City and Broadstripe. Because there remains a material issue of fact as to whether the City should have anticipated that its approval of the metal vault cover in the middle of a

sidewalk on a steep slope would lead to an unsafe condition, we reverse and remand Sluys's claim against the City for trial. We affirm the dismissal of Broadstripe.

<u>FACTS</u>

On January 6, 2012, during a rainy afternoon, Sluys slipped and fell on a wet metal utility vault cover while walking downhill on the 3rd Avenue South sidewalk between Yesler Way and South Washington Street in downtown Seattle. Sluys's fall resulted in injuries to both knees requiring surgery and a lengthy recovery.

The vault cover is not owned by the City. In 1990, Broadstripe's predecessor company, Summit Communications (Summit), applied for a permit to install a utility vault and vault cover in its current location on 3rd Avenue South. The City issued the permit under the City's Street Use Ordinance and the installation was completed by Summit in 1992. The vault cover encompasses at least a third of the sidewalk. After declaring bankruptcy, Broadstripe subsequently sold ownership of the utility vault and vault cover to WaveDivision Holdings aka Wave Broadband LLC (Wave). The transfer was finalized on January 13, 2012—one week after Sluys's injury.

Sluys filed a tort claim notice with the City in May 2014. In August 2014, the City responded to the tort claim by stating that "the vault cover on which your client alleges he slipped and fell is owned by Wave Broadband, so it is our position that Wave Broadband would be the at-fault party to the extent that fault for the accident can be placed on the walking surface." The City informed Sluys that it was closing his claim.

On January 9, 2015, Sluys filed a complaint for damages alleging the City and Wave were liable for the injuries and damages he suffered as a result of his slip and fall.

On August 25, 2015, Wave provided Sluys a signed declaration from its executive vice president explaining that Wave purchased the metal utility vault cover from Broadstripe on January 13, 2012—subsequent to Sluys's accident. Because it did not own the vault cover at the time of Sluys's accident, in January 2016, Wave moved for summary judgment and dismissal. Shortly thereafter, the City also moved for summary judgment claiming that it was not liable for Sluys's injuries because it did not own the metal vault cover and had no prior notice of unsafe conditions at the location where Sluys slipped and fell.

On March 11, 2016, Sluys filed an amended complaint joining Broadstripe as a defendant. Sluys then filed responses to both motions for summary judgment. Sluys's responses included a declaration from Dr. Gary Sloan, Ph.D., a psychologist with a specialization in ergonomics and human factors, who reviewed the slope resistance of the vault cover. Dr. Sloan conducted a friction analysis on the vault cover and determined that it presented an unsafe condition. Dr. Sloan opined, "[w]hen wet, it could be anticipated that a metal hatch cover placed in a steeply sloped walkway would pose a potential slip hazard."

On April 1, 2016, the trial court granted the City's motion for summary judgment dismissing Sluys claims with prejudice.[1]

On September 9, 2016, Broadstripe filed a motion to dismiss pursuant to CR 12(b)(6) for failure to commence the action within the applicable statute of limitations.

---

[1] Wave was also dismissed from the action. Sluys does not contest that dismissal on appeal.

On November 1, 2016, the trial court granted Broadstripe's motion to dismiss with prejudice. Sluys appeals both orders.

## ANALYSIS

### *Dismissal of the City of Seattle*

Sluys first contends that the trial court erred in granting summary judgment and dismissing his negligence claim against the City. We agree.

We review summary judgment orders de novo, considering the evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is proper when the pleadings, depositions, interrogatories, admissions, and affidavits, demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Degel v. Majestic Mobile Manor Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). "A material fact is of such a nature that it affects the outcome of the litigation." Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995).

The moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party meets this initial showing and is a defendant, the burden shifts to the plaintiff. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). While we construe the evidence and reasonable inferences in the light most favorable to the nonmoving party, if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is

proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Government entities in Washington are "liable for damages arising out of tortious conduct . . . to the same extent as if they were a private person or corporation. RCW 4.96.010(1); Washburn v. City of Federal Way, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013). To succeed on a negligence claim, the plaintiff must prove: the existence of a duty, breach of that duty, a resulting injury, and proximate cause between the breach of duty and resulting injury. Washburn, 178 Wn.2d at 753. The only issue before us is whether the City owed a duty to Sluys.

"Negligence is generally a question of fact for the jury, and should be decided as a matter of law only 'in the clearest of cases and when reasonable minds could not have differed in their interpretation' of the facts." Bodin v. City of Stanwood, 130 Wn.2d 726, 741, 927 P.2d 240 (1996) (quoting Young v. Caravan Corp., 99 Wn.2d 655, 661, 663 P.2d 834 (1983)). While the existence of a legal duty is a question of law which we review de novo, "where duty depends on proof of certain facts that may be disputed, summary judgment is inappropriate." Afoa v. Port of Seattle, 160 Wn. App. 234, 238, 247 P.3d 482 (2011).

It is well settled that a city has a duty to maintain and repair its streets and sidewalks in order to keep them reasonably safe for ordinary travel. Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002); Nguyen v. City of Seattle, 179 Wn. App. 155, 164, 317 P.3d 518 (2014); 6A WASHINGTON PRACTICE: WASHINGTON PATTERN

JURY INSTRUCTIONS: CIVIL 140.01 (6th ed. 2012) (WPI).[2] Generally, actual or constructive notice of the unsafe condition is required before liability arises under a city's duty to maintain streets and sidewalks. Nguyen, 179 Wn. App. at 165. Notice is not required, however, if the government entity either created the unsafe condition or should have anticipated the condition would develop. Nguyen, 179 Wn. App. at 165 (citing Batten v. S. Seattle Water Co., 65 Wn.2d 547, 550-51, 398 P.2d 719 (1965) and Albine v. Nat'l Bank of Commerce of Seattle, 60 Wn.2d 745, 748, 375 P.2d 487 (1962)).[3] "In sum, if the government entity created the unsafe condition either directly through its negligence or if it was a condition that the governmental entity should have anticipated, the plaintiff need not prove notice." Nguyen, 179 Wn. App. at 165-66.

While the vault cover at issue was not owned by the City, the City concedes that Summit applied for a permit to install the utility vault and vault cover within the City sidewalk. The City further concedes that it approved the requested permit subject to Summit complying with guidelines and parameters set by the City as to where within the public right-of-way the facilities could be located. Thus, the only question is whether when approving the permit, the City should have anticipated whether the utility vault could lead to an unsafe condition.

---

[2] WPI 140.01 defines the duty of governmental entities for sidewalks, streets, and roads:
The [county] [city] [town] [state] has a duty to exercise ordinary care in the [design] [construction] [maintenance] [repair] of its public [roads] [streets] [sidewalks] to keep them in reasonably safe condition for ordinary travel.
[3] See also WPI 140.02:
In order to find a [town] [city] [county] [state] liable for an unsafe condition of a [sidewalk] [street] [road] that was not created by its employees, [and that was not caused by negligence on its part,] [and that was not a condition which its employees or agents should have reasonably anticipated would develop,] you must find that the [town] [city] [county] [state] had notice of the condition and that it had a reasonable opportunity to correct the condition [or give proper warning of the condition's existence].

Sluys presents Dr. Sloan's declaration to support his assertion that the vault cover was unsafe. Sloan investigated the site of Sluys's fall, took various measurements, and then applied a human factors analysis to the pertinent facts. He described his evaluation in a 15-page written declaration accompanied by multiple photographs, charts, and research papers. The City concedes, "the declaration of Dr. Gary Sloan . . . raised a genuine issue of material fact that the vault cover currently presents an unsafe condition."[4] But more than just concluding that the utility vault was slippery, Sloan also opines:

> When wet, it could be anticipated that a metal hatch cover placed in a steeply sloped walkway would pose a potential slip hazard. In the safety disciplines, if a hazard can be identified, then reasonable attempts should be made to eliminate the hazard. If the hazard cannot be eliminated, then people should be guarded from exposure to the hazard. Lastly, if residual risk remains following reasonable attempts at elimination and guarding, people should be warned about the hazard and provided direction for how to avoid harm. In the present matter, the hatch cover should not have been placed in a predictable pedestrian travel path having high density pedestrian traffic.[5]

This evidence is sufficient to raise an issue of material fact as to whether the City breached its duty of care by permitting the installation of a utility vault cover in a location that it should have anticipated would result in an unsafe condition. Consequently, dismissal of Sluys's claim against the City on summary judgment was not appropriate.[6]

---

[4] The City argues there is no evidence of the slip resistance at the time of the fall, and thus Sluys has not provided sufficient evidence. We are unpersuaded by this argument. Viewing all reasonable inferences in favor of Sluys, there is no reason to assume that the current slip resistance is substantially different from three years ago.

[5] (Emphasis added.)

[6] Because we conclude that there is a question of material fact as to whether the City should have anticipated that allowing the installation of the vault cover in this location would lead to an unsafe condition, we do not address whether the City had actual or constructive notice of the unsafe condition.

*Dismissal of Broadstripe*

Sluys argues next that the trial court erred in dismissing Broadstripe pursuant to CR 12(b)(6). We disagree.

A motion brought under CR 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016). We review CR 12(b)(6) dismissals de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). "A motion to dismiss for failure to state a claim is treated as a motion for summary judgment when matters outside the pleading are presented to and not excluded by the court." Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

Under RCW 4.16.080, a plaintiff must commence a lawsuit within three years from the date its cause of action accrues. Generally, the cause of action "accrues" at the time the act or omission occurs. White v. Johns-Manville Corp., 103 Wn.2d 344, 348, 693 P.2d 687 (1985). Sluys's accident occurred on January 6, 2012. Consequently, the statute of limitations expired on January 6, 2015. Sluys filed his amended complaint naming Broadstripe on March 11, 2016—approximately 14 months after the expiration of the statute of limitations.

Sluys does not dispute that his amended complaint naming Broadstripe was filed more than three years after his accident. Instead, Sluys urges we apply the "discovery rule" to extend the applicable statute of limitations until he discovered that the vault cover was owned by Broadstripe.

In some rare circumstances, Washington courts apply a "discovery rule" of accrual that postpones the running of the statute of limitations only until the time a plaintiff, through the reasonable exercise of due diligence, should have discovered the elements of the cause of action—specifically duty, breach, causation, and damages. 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 575-76, 146 P.3d 423 (2006); G.W. Const. Corp. v. Prof'l Serv. Indus., Inc., 70 Wn. App. 360, 367, 853 P.2d 484 (1993). "Because the [discovery] rule compels a defendant to answer stale claims," the rule is applied "only in limited circumstances in which the plaintiff lacked the means to ascertain that a wrong had been committed." C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 749, 985 P.2d 262 (1999). The discovery rule is limited to "claims in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational diseases, self-reporting or concealment of information by the defendant," and to claims "in which plaintiffs could not immediately know of the cause of their injuries." Matter of Estates of Hibbard, 118 Wn.2d 737, 749-50, 826 P.2d 690 (1992).

"The plaintiff bears the burden of proving that the facts constituting the claim were not and could not have been discovered by due diligence within the applicable limitations period." Clare v. Saberhagen Holdings, Inc., 129 Wn. App. 599, 603, 123 P.3d 465 (2005). When the plaintiff is "placed on notice that the statutory elements are in place . . . the plaintiff is charged with what a reasonable or diligent inquiry would have discovered at that time." Clare, 129 Wn. App. at 605. Whether the plaintiff exercised proper due diligence in order to discover the necessary facts is a question of fact that generally precludes summary judgment. Clare, 129 Wn. App. at 603. "However, when

reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." Clare, 129 Wn. App. at 603.

Sluys relies primarily on Orear v. Int'l Paint Co., 59 Wn. App. 249, 250-51, 796 P.2d 759 (1990), a latent injury products liability case in which the court applied the discovery rule for a plaintiff who was exposed to dangerous chemicals through his employer. In Orear, the court recognized the obstacles that the plaintiff faced in determining his employer's manufacturers and suppliers, as the employer refused to identify them and one manufacturer had changed its name. The court held "the justification for the discovery rule as applied to unknown injury applies with equal force to unknown defendants," and remanded for the trier of fact to determine whether the plaintiff should have discovered the defendant's identity. Orear, 59 Wn. App. at 257. Orear holds that the discovery rule can be applied to unknown defendants; however, the court must still find that the identity of the defendant was not available to the plaintiff. Orear, 59 Wn. App. at 257; Iwai v. State, 76 Wn. App. 308, 315, 884 P.2d 936 (1994).

In this case, the identity of the owner of the vault was public record and available to Sluys. Broadstripe filed for Chapter 11 Bankruptcy protection in January 2009. In August 2011, Wave posted a press release to its website announcing the acquisition of Broadstripe. The press release stated "the sale must be approved by the Bankruptcy Court and, upon approval, the transition is expected to take up to four months before the sale can be officially completed." On November 21, 2011, the City passed an ordinance authorizing the assignment of the cable franchise from Broadstripe to Wave. A notice of the assignment was published online. The notice stated "For purposes of this Agreement, the 'Effective Date' is the later of: 1) the Approval Date 2) the 'Closing

Date' as defined in Section 4.1 of the Purchase Agreement." Section 4.1 of the Purchase Agreement references the required closing conditions in Article VII, including approval by the bankruptcy court.

Sluys knew the necessary facts regarding his injury. On the day of his accident, he slipped on a wet vault cover sustaining acute knee injury.[7] Sluys then had three years to discover the owner of the vault cover. Sluys waited until May 2014 before filing his claim with the City and did not file his complaint until January 9, 2015. At the time he filed his complaint, the publicly available information should have at least put Sluys on notice that on the date of his accident, Broadstripe might still have owned the utility vault.

The discovery rule was not intended to apply in cases where the plaintiff simply delayed research and discovery until the end of the limitation period. "A party must exercise reasonable diligence in pursuing a legal claim. If such diligence is not exercised in a timely manner, the cause of action will be barred by the statute of limitations." Reichelt v. Johns-Manville Corp., 107 Wn.2d 761, 772, 733 P.2d 530 (1987). Sluys failed to meet his burden of proving that the identity of the correct owner of the vault "could not have been discovered by due diligence within the applicable limitations period." Clare, 129 Wn. App. at 603. Dismissal of Sluys's complaint against Broadstripe was appropriate.

---

[7] Although Sluys may not have known the extent of his injury, "[t]he statute of limitations is not postponed by the fact that further, more serious harm may flow from the wrongful conduct." Green v. A.P.C. (Am. Pharm. Co.), 136 Wn.2d 87, 96, 960 P.2d 912 (1998).

We reverse the decision dismissing Sluys's claim against the City and remand for trial. We affirm the dismissal of Broadstripe pursuant to CR 12(b)(6).

_____

WE CONCUR:

_____      _____